And we'll move to our third case this morning, Carlton Reives v. Illinois State Police.  All right, I see both counsels are here. Good morning, you may proceed. All right, good morning. May it please the court, I apologize it took me a moment there to get set up. My name is John Baker and I represent the plaintiff appellant in this matter, Carlton Reives. For a number of years, Carlton was employed by the Illinois State Police. Our appeal raises essentially two questions. First, was the downgrade Carlton Reives' job ratings and adverse employment action under Title VII? The second question is, did Reives present sufficient evidence from which a jury could conclude that he was disciplined more has he established that he was similarly situated, as his court has defined that term, to his co-worker, Boram Kim? I would like to address, if I might, the first issue. And this is the downgrade of the ratings that were provided to Mr. Reives. And I think it's important to understand that the rating system for the Illinois State Police for its sworn officers are different than a traditional employment evaluation. In fact, it's set out in Illinois state law. The Illinois Administrative Code provides for how individuals are promoted. One of those factors is the evaluations or the promotional ratings, which they are called. The second is the score that an employee receives on his test. Now, the promotional system is actually overseen by a separate agency altogether. It's the Illinois State Police Merit Board. What you have, though, is you have a test that is given to every individual who is interested for applying to a promotion. It's a written test. And in this case, it was promoting to the level of sergeant. That is one of the factors. That factor, the score on the test compromises about 50% of the overall score that the employee receives. The second factor is the promotional ratings that are performed by the individual's supervisory chain. Now, we allege that those were downgraded impermissibly. What the district court said and what the state police argued below was that simply is not an adverse employment action under Title VII. Now, what happened here was once the Merit Board receives the scores, both the written test score and the test and the ratings from the supervisory chain, it then makes an overall score. That score is divided up regionally or where a person is located. And there is a list that is prepared. A certain number of individuals are identified as being certified for promotion. Others are not certified for promotion. But also that there is a ranking on that list. If I could interrupt and just jump in with a question here because time is limited. Let's just accept for the sake of argument that these adjustments to his performance rating had some impact on future opportunity for promotion. What is the evidence that they were discriminatory? As I understand it, the adjustments were made because of problems with your client's attendance and abuse of sick time. Well, I don't think that's accurate. I mean, first of all, the evidence was that the sick time that was FMLA approved when he was recovering from a surgery. He had to take time off to go for physical therapy. But more importantly, Judge Sykes, I think that was not an issue that was raised below by the state police. The state police, when they made their motion for summary judgment, their argument wasn't so much that it wasn't discriminatory. Their argument was, look, this is trivial. It's not an adverse employment action. So because that was the argument in the way that they framed it before the district court, there's not a lot in the record about what was and how that could be discriminatory. And I don't think that the district court made that analysis either. The district court essentially said, look, this is not an adverse employment action. It just isn't. And for that reason, granted summary judgment. And again, that was the way that the issue had been framed. To answer my question, though, what is the evidence of because it wasn't raised. So the record isn't as detailed as it would have been had we been forced to make the argument below. But what you had was you had my client's immediate supervisor who prepared the evaluation that would go through and would outline what the ratings were. He provided that evaluation to Mr. Reeves. Somehow later, there were two individuals who were above who changed the ratings. They ordered that this was Doster and Sposiri who ordered that the ratings be lowered. And traditionally, this is a determination that is made. The ratings is a determination that is made by the immediate supervisor. Immediate supervisor said he agreed with the original ratings that had been provided. If I could try to get you to focus on the question that I asked, what is the evidence that those two state actors, Capt. Sposiri and Doster, I can't remember what his range is, but those two supervisors in the state police acted with discriminatory purpose when they adjusted his performance ratings. I thought the record shows that it was because he was placed on proof status for the because there were questions about his attendance. I don't believe that that's accurate. Again, the evidence that was demonstrated on proof status shows that that was inappropriate. He never should have been placed on proof status because these were approved absences to begin with. That's the wrong question. As you know, it's not whether the reason was correct. It's whether the reason was pretextual. So the question is, is there that they acted out of discriminatory purpose? Well, there is no direct evidence. This, you know, had we analyzed it under the McDonnell-Douglas, that's how we would have analyzed it. So there would have been no evidence that any type of direct evidence or anything that could be presented as direct evidence. But what we had was that it was inconsistent with the way that the policies were supposed to be done. It was supposed to be done by the supervisor. That decision was taken away from the supervisor. As you know, the failure to follow internal rules isn't evidence of discriminatory purpose. So you've got to have either some direct or substantial evidence of discriminatory intent, or you have to use the McDonnell-Douglas framework. And I don't know that there was a comparator offered for this component of the case. There wasn't, but the reason there wasn't a comparator offered was because it was not what they raised as their argument on summary judgment. You know, we have to respond to the arguments that were made on summary judgment by the defendant. And the defendant didn't make those arguments of a prima facie case. They simply said, as to this particular issue, it's not an adverse employment action. And that's how the district court analyzed it as well. So, you know, coming back now and making the argument as to what evidence there is to support that, I think, is inappropriate because that was not the way it was framed below before the district court. And so, you know, again, just to get to the issue of pretext under McDonnell-Douglas, not complying with internal rules, deviating from internal rules and policies, is considered evidence. This court, in multiple cases, has considered it evidence of pretext. Again, that's not something that we've argued here. It's not something we argued before the district court. But this court certainly has done that and recognized that many times over the years, that sort of a deviation does create a pretextual argument that can be submitted to a jury. So, you know, in my view, and again, maybe I'm misunderstanding, but my view is that the issue here and the issue that was raised by the Illinois State Police in support of their motion for the case is that this is an adverse employment action. And because of what it is used for, and again, it is used to downgrade the performance or excuse me, to assess whether somebody is qualified for promotion and where they are going to be ranked in the promotional scale. So in my view, that is the sort of thing that is an adverse employment action. And I think Mr. Baker, is this case simply about not getting a favorable ranking? I think that that's the most, to answer your question, Judge Flan, yes. I think that that is the most consequential. His job titles and his responsibilities remained the same, did they not? Yes and no. And if I could explain that just a little bit, Your Honor. When an individual is promoted, they are officially promoted. He was in an acting capacity as a sergeant. So he was being paid as a sergeant. However, there was no way for him to ever promote above that sergeant role until he was actually promoted to the position of sergeant. So in order to further his career, to advance his ability to go up, that step had to be done for him to be able to be promoted into the position of sergeant. Without that, he can't be promoted any further. He can't act up into a higher title. So the fact that he was not able to become promoted to receive that hard rank, as they call it from the State Police Merit Board, precluded him from any further advancement. But yes, the job duties he was performing, he was performing the job duties of an acting sergeant. Well, he was still certified for promotion, right? He was certified for promotion the one year afterwards, he was. However, he was much lower on the list. He moved from 12, being certified as number 12 on the list, down to number 26 on the list. So it impacted his ability, you know, the consideration is based on those numbers. You know, the higher your number is, the more likely you are to be promoted. So I think our case law has suggested opportunity for promotion, and that it didn't occur, isn't an adverse employment action. In other words, his future was not totally blocked, was it? Well, I don't know that it was totally blocked. I mean, he could have been promoted being ranked as 26. But what I think is his chances were greatly diminished as a result of this. Isn't that true in any setting, corporate or public service, where annually you get a ranking? And it may vary from year to year, but it isn't precluding a change in the future, I guess, is what I'm really looking at. Yeah, and I understand what you're saying, Judge Fleming. Oftentimes in the corporate world, and in a lot of places, there are annual performance evaluations, and those can be used to determine whether somebody is promotable. This is different, though, because this was a rating that is governed by Illinois law that has to be done. It has to be given to the State Police Merit Board so that a specific numerical ranking can be made. And so I do think that it is different than a traditional performance evaluation that an employee might have, whether it be in the private sector or even in the public sector. And so while I know that this court has traditionally looked at job performance evaluations and said, look, those really aren't sufficient, I think that the basis for making that determination has always been that there's not the evidence to show that it blocked somebody's ability to move forward. And I think here, by demonstrating what we have, we have established that his ranking has been greatly, greatly reduced as a result of the evaluation. I see my time is expiring, and I certainly want to answer any questions that the court might have, but without any further questions, I'll save my 30 seconds for rebuttal. All right, thank you. Ms. Shrove. Thank you. Good morning, and may it please the court. My name is Alexandrina Shrove, Assistant Attorney General on behalf of Defendant Apelli, Illinois State Police, which I will refer to as ISP. ISP did not discriminate against Mr. Reeves because of his race, and as such, the district court properly granted summary judgment to ISP for two primary reasons. First, Mr. Reeves failed to establish a prima facie case for discrimination based on his performance evaluation and change in promotional ranking because neither were adverse employment actions. Second, Mr. Reeves failed to establish a prima facie case for discrimination based on his 60-day suspension because his partner was not a similarly situated employee who was treated better, and because he failed to meet ISP's legitimate employment expectations. Turning to my first point, Mr. Reeves failed to establish a prima facie case for discrimination based on his performance evaluation and change in promotional ranking because neither were adverse employment actions. An adverse employment action is some quantitative or qualitative change to the terms of the employee's work, such as money or future career prospects. It's more than a minor or trivial action that an employee didn't like. Here, Mr. Reeves complained about the changes to his performance evaluation, but the performance evaluation alone cannot constitute the basis for a discrimination claim because a negative performance evaluation unaccompanied by a tangible job consequence does not constitute an adverse employment action. And contrary to his argument, the changed performance evaluation did not make him ineligible for promotion. Therefore, he didn't suffer any tangible job consequence. Even when the evaluation factored into his 2016 ranking, he was still certified for promotion to the rank of sergeant. And while he didn't hold that hard rank of sergeant, Mr. Reeves testified that he was already receiving sergeant-level pay and continued to do so until his retirement in 2018. So he cannot argue that his monetary compensation suffered as a result of either the evaluation or the promotional ranking. Furthermore, to the extent that this court determines that either the performance evaluation or the change in promotional ranking qualify as adverse employment actions, Mr. Reeves' discrimination claims still fails because ISP provided a legitimate non-discriminatory reason for its decision. Sergeant Griffin testified that the categories in the evaluation were changed because Mr. Reeves' job simply did not require him to perform those functions. And the other categories, both of which involved internal management by ISP officers, were changed because of Mr. Reeves' placement on proof status. In fact, we can see as much by looking at the signatory page on the evaluation, which stated that Mr. Reeves used an excessive number of sick on appeal. Mr. Reeves was placed on proof status because of the 32 sick days he used during that period. Sixteen were used in conjunction with other time off, such as holidays and weekends. And as for the promotional ranking list itself, I think it's important to note that ISP does not create that list. As my opposing counsel noted, the merit board, a distinct agency does. They are the ones who compile that actual list. And the evaluation is only one of several factors in his placement on that list. So, for example, his written examination makes up 50% of his placement on that list and where he falls on that list. And seniority factors in 5%. So, based on the score of those factors, it's the merit board that ranks the officers according to their zone or region. And so, the number of officers ranked and qualified each year can change. And simply because an officer is ranked higher on the list does not mean that they're guaranteed a promotion. Similarly, it shows, is there any question that the performance evaluation caused a downgrade in his performance or in his promotion ranking, even though he remained eligible and on the list, he dropped back as a consequence of the performance evaluation? Your Honor, there's no evidence in the record to suggest how exactly the performance evaluation factored into his ultimate ranking. As I mentioned, there's several factors that go into the merit board's determination of where an officer ranks on that list. The evaluation is one factor, but we also have to look to the written examination, which is the of how a person, how an officer falls on that list and seniority factors in an additional 5%. But were there any changes in those components, those inputs into the performance ranking? Your Honor, there's no evidence in the record to indicate how Mr. Reeves performed on the written examination or how perhaps his seniority status might have changed his placement on the as a factor in that ranking. But I think what's important to note is that ultimately where you fall on that list doesn't impact whether or not you are given a promotion as long as you are certified for a promotion. And we can see as much when we look to Mr. Reeves' 2015 ranking, which was issued before any of the events at issue here occurred. In 2015, he was ranked 12th on the promotional rankings list and applied for two sergeant level positions, but didn't receive either. So as long as an officer is certified for a promotion, he is eligible for a promotion. And Mr. Reeves was certified for promotion in 2016, even after the performance evaluation factored in. There's simply no evidence in the record that Mr. Reeves applied for and finally, Mr. Reeves does not point to any evidence in the record to suggest that ISP's proffered reasons were pretextual. In fact, the only evidence presented in the record regarding Mr. Reeves' race at all was Sergeant Griffin's testimony when he said that of his years supervising Mr. Reeves, he had never heard anyone make racial comments about or to Mr. Reeves. As a result, Mr. Reeves' discrimination claim based on his revised performance evaluation and change in promotional ranking fails. And I think it's also important to note that you weigh any argument on anything other than whether the performance evaluation was an adverse employment action, that the rest of the components of the prima facie case are, were undeveloped because you put all your eggs in one basket and that was, that this is not an employment, adverse employment action. Do you have a response to that? Your Honor, I missed the beginning part of your question, but I think what you're asking is whether or not ISP forfeited or somehow waived an argument by failing to bring it before the the remaining elements of the prima facie case as far as his evaluation goes. Even if that were the case, your Honor, we still argue that second and third steps in the McDonnell Douglas burden shifting framework to say that ISP provided a legitimate non-discriminatory reason for its reasons for revising Mr. Reeves' performance evaluation. And ultimately, Mr. Reeves failed to provide any evidence to demonstrate that those decisions were pretextual. So to the, to the extent that any argument as far as the prima facie case goes was forfeited, we still moved on and argued before the district court that the, that second and third step of the McDonnell Douglas test did apply here. This argument was advanced before the district court. And so is appropriate before this court now. Now, briefly, I'd like to turn to my second point and that Mr. Reeves failed to establish a prima facie case for discrimination based on his 60 day suspension because his partner was not a similarly situated employee that was treated better than he was. And he was not meeting ISP's legitimate employment expectations. Contrary to Mr. Reeves' argument, he and his partner did not engage in the same misconduct. And it's important to understand the distinction. The officers were disciplined for distinct ISP rule violations, which resulted in their different penalties. Mr. Kim was disciplined for attending a wake while on duty. Mr. Reeves, on the other hand, was disciplined not because of his actions during the Super Bowl duty, but rather because he repeatedly lied about his arrival times during subsequent investigation. And this distinction is evident when we look at the Merit Board's decision implementing Mr. Reeves' 60 day suspension. They specifically said that the charges did not deal with Mr. Reeves' conduct during his inspections and that the penalty was not based on the manner in which he conducted those inspections, but rather its decision was based on him knowingly submitting inaccurate times in the departmental memorandum and during the subsequent investigation. Given the differences in their behavior, Mr. Kim and Mr. Reeves violated different ISP policies and were punished for those distinct violations. And because of that, Mr. Kim is not a similarly situated employee. In addition, Mr. Reeves was not meeting ISP's legitimate employment expectations. He lied on multiple occasions, violating two ISP policies. And when an employee violates an employer's established policies, he fails to meet the employment expectations. Because he failed to establish two of the necessary elements for that prima facie case for discrimination based on his 60 day suspension, this court can affirm the district court's judgment on that basis alone. And if there are no further questions, as to all of the remaining arguments, ISP rests on its brief. If there are, for these reasons, and the reasons stated in that brief, this court should affirm the decision of the district court to grant summary judgment to ISP. Thank you very much. Mr. Baker. Yes, thank you, Your Honor. They have changed their argument on appeal from what it was before the district court. The only issue they raised before the district court was this question of it was an adverse employment action. And if you take a look at it, you can go to docket 61, which is their motion for summary judgment. Pages 8 through 11 is the extent of their argument on that issue. And I would also point out, the only argument that they made that's different is they argued that he wasn't qualified anyway, because the merit board said he wasn't qualified, which was a factually incorrect argument to begin with. But they have waived that argument that they are trying to make today. And again, I would ask that the court just review their summary judgment brief pages 8 through 11, because I think that outlines what they actually argued before the district court and what they are able to argue before this court as well. So I thank you. Thank you very much. Thanks to both counsel. The case is taken under advisement, and we'll take a brief recess before calling the fourth case. We'll resume in about 10 minutes.